[No. 4596.   Decided September 26, 1903.]

## C. C. SMITH, *Respondent,* v. JOHN SULLIVAN, *as Chief of Police of City of Seattle, Appellant.*[1]

POLICE JUDGE—TEMPORARY APPOINTMENT—AUTHORITY OF DE
FACTO OFFICER.   Under Laws 1899, p 137, § 11, authorizing the
mayor to appoint a police judge *pro tem.* in the absence or dis-
ability of the regular judge, such appointee is a *de facto* judge, and
his judgments are not subject to collateral attack by reason of
the fact that the regular judge was not absent or disqualified and
there was in fact no vacancy.

HABEAS CORPUS—QUESTIONING JUDGE'S TITLE TO OFFICE.   On
habeas corpus, the right of the judge ordering the commitment of

[1]Reported in 73 Pac. 793.

the prisoner to hold his office can not be inquired into, as that question is wholly distinct from the question of the jurisdiction of the court over the offense or the parties.

Appeal by John Sullivan, chief of police of Seattle, from a judgment of the superior court for King county, Griffin, J., entered September 8, 1902, discharging the applicant, C. C. Smith, from custody upon a writ of habeas corpus, and for costs, after a hearing upon the return to the writ shohwing a commitment from the police court of Seattle.    Reversed.

*Ellis De Bruler,* for appellant.    The appointment regular on its face constituted the officer a *de facto* judge and his judgments cannot be attacked collaterally.    *Kennedy v. Commonwealth,* 78 Ky. 447; *State v. Fountain,* 14 Wash. 236, 44 Pac. 270; *State v. Carroll,* 38 Conn. 449; *Ex parte Strong,* 21 Ohio St. 610; *In re Boyle,* 9 Wis. 240; *State v. Bloom,* 17 Wis. 538; *Cooper v. Moore,* 44 Miss. 386; *Meagher v. County of Storey,* 5 Nev. 244; Thorpe, Public Officers, §§ 630-637, 650-652.

ANDERS, J.—On August 19, 1902, the petitioner and respondent, C. C. Smith, was tried and convicted in the police court of the city of Seattle, upon a complaint charging him with a violation of a certain city ordinance relative to disorderly persons, and sentenced to pay a fine of $50, and, in default of payment, was committed to the city jail.    Said trial was had before John F. Miller, who had been previously appointed police judge *pro tempore* by the mayor of the city to serve and act as such during the temporary absence of R. R. George, the police judge of said city.    On August 25, 1902, the said defendant, Smith, applied to the superior court of King county for a writ of habeas corpus.    In his petition for the writ he alleged, that he was illegally restrained

of his liberty at and in the city of Seattle by John Sullivan, chief of police of said city, and by him imprisoned in the city jail of said city; that the cause or pretense of said restraint and imprisonment, according to the best knowledge and belief of the petitioner, is as follows: that on August 19, 1902, said petitioner had an alleged trial before one John F. Miller on a complaint filed with said Miller, wherein said petitioner was charged with having violated a city ordinance defining the crime of disorderly persons, and at said alleged trial said Miller found the defendant guilty, and imposed a fine of $50 against petitioner, and in default of the payment of said fine petitioner is illegally restrained of his liberty; that said restraint and imprisonment is illegal, and that the illegality consists in this; that the said John F. Miller, before whom the aforesaid complaint was filed and before whom the said alleged trial was had, and who rendered the said alleged judgment imposing the said fine on petitioner, had no right or authority whatever to attempt to hold court, or fine petitioner, and, in default of the payment of said fine, to order the imprisonment of said petitioner; that the Honorable Robert R. George is the police judge of the city of Seattle, and has the exclusive jurisdiction over all offenses defined by any ordinance of said city; and that on the 19th day of August, 1902, the said George, judge of said police court, was present in the city of Seattle, and there was no want of legal capacity whatever on the part of said George to preside at said police court on said 19th day of August, 1902, nor was the said George on the day last mentioned laboring under any disability whatever.

Upon presentation of this petition to the superior court, the writ was issued, directed to John Sullivan, as chief of police of the said city of Seattle. The said Sullivan

filed a demurrer to the petition upon the ground that the facts alleged did not entitle the petitioner to the relief sought. The demurrer was overruled by the court, and an exception was duly taken. Thereafter the chief of police made his return to the writ, under oath, showing his official capacity, and that he had the petitioner, Smith, in his charge under and by virtue of a commitment from the police court of the city of Seattle, signed by John F. Miller as police judge, a copy of which was attached to and made a part of the return; and that on the 18th day of August, 1902, Hon. T. J. Humes, mayor of the city of Seattle, appointed the said John F. Miller to act as police judge during the temporary absence of R. R. George, police judge of said city. A certified copy of the appointment was also attached to the return and made a part thereof. At the hearing the court permitted Police Judge George, over the objection of counsel for the chief of police, Sullivan, to testify that at all times during the 18th and 19th days of August, 1902, he was within the corporate limits of the city of Seattle, and within the territory over which he, as police judge, had exclusive jurisdiction, but that during said days he was having a two-day vacation, and was serving on a committee of the Elks' carnival, then being held in the city of Seattle.

The court found from the evidence that the Honorable Robert R. George is, and was, on the 18th and 19th days of August, 1902, the judge of the police court of the city of Seattle; that at all times during said days the said George was present within the corporate limits of the city of Seattle, and within the territory over which he, as police judge, has the exclusive jurisdiction, and that at no time during said 18th and 19th days of August, 1902, was he absent from the said city, but was at all times actually present and available as judge of said police court

within the territory over which he, as such judge, has exclusive jurisdiction.    As a matter of law, the court concluded "that said trial had before said John F. Miller, Esq., judgment rendered by him, and commitment thereon under and by virtue of which the said C. C. Smith is held, imprisoned, and restrained of his liberty by said respondent, John Sullivan, chief of police in and for said city of Seattle, is all without any warrant or authority at law, and absolutely null and void, and that the said C. C. Smith is illegally imprisoned and restrained of his liberty by said John Sullivan, chief of police for the said city of Seattle."    And, by reason of the premises, the said Smith was discharged, and judgment for costs was rendered against the chief of police, from which ruling and judgment he has appealed.

It is provided in § 11 of an act approved March 13, 1899, entitled, "An act relating to justices of the peace and constables in cities of the first class, and fixing their number and salaries, and providing for making one of the justices elected in such cities a police justice, and defining his duties, jurisdiction and powers," that, "in case of the temporary absence or inability of the police judge to act, the mayor shall appoint, from among the practicing attorneys, qualified electors of the city, a police judge *pro tempore,* who, before entering upon the duties as such, shall take and subscribe an oath as other judicial officers, and while so acting he shall have all the powers of the police judge:    *Provided, however,* such appointment shall not continue for a longer period than the absence or disability of the police judge."    Laws 1899, p. 137.    And it was under and by virtue of this provision of law that the mayor of the city appointed Mr. Miller police judge during the temporary absence of the regularly appointed and qualified judge.    The appointment

was in writing, and appears in full in the record, and that it was made in due form is not disputed. But we think we are fully warranted in concluding from the findings, conclusions, and judgment of the court below that the court was of the opinion that the mayor's appointment was unauthorized and ineffective, and conferred no judicial power upon his appointee, in this instance, by reason of the fact that, at the time of the appointment and of the arrest, trial, conviction and sentence of Smith, the police judge was personally within the city limits and within the territory over which the police judge has exclusive jurisdiction, and not incapacitated from discharging his judicial functions.

It must be conceded that a police judge *pro tempore* has all the powers of the police judge, for the above mentioned statute expressly so declares; and, that being so, it follows that the judgments of such temporary judge are as valid and binding as those of the regular police judge. And the law provides that the police judge in a city of the first class shall have exclusive jurisdiction over all offenses defined by any ordinance of the city, and full power and authority to hear and determine all causes, civil and criminal, arising under such ordinance, and to pronounce judgment in accordance therewith. Laws 1899, p. 135, § 3.

Our statute concerning habeas corpus provides that:

"No court or judge shall inquire into the legality. of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following: 1. Upon any process issued on any final judgment of a court of competent jurisdiction. . . ." Bal. Code, § 5826.

And it appears from Smith's own petition that he was in the custody of the chief of police upon a process issued

on what purported to be a final judgment of a court of competent jurisdiction, and therefore the only question for determination was whether Mr. Miller was legally empowered to act as judge of that court.   If he was so empowered, the superior court had no right, under the provision of the statute last above mentioned, to inquire into the legality of the commitment.   And when it appeared—as it did appear at the hearing of the petition— that John F. Miller was exercising the functions of the office of police judge at the time of the trial and commitment of petitioner, and that he claimed the right to do so by virtue of a regular appointment by the legally constituted appointing power, the petitioner should have been immediately remanded to the custody of the chief of police, for the reason that he was not illegally restrained of his liberty.   The appointment by the mayor of Miller to act as temporary judge conferred upon him all the power and jurisdiction, for the time being, possessed by any police judge of the city, and the judgments pronounced by him were, until reversed in an appropriate proceeding, of the same force and effect as the judgments of any other judge, or court, of competent jurisdiction.

Habeas corpus cannot operate as an appeal or writ of error.  9 Enc. Plead. & Prac., 1062.  Nor is it a proper proceeding to test the right of even a *de facto* officer to hold a legally constituted office.   *In re Boyle,* 9 Wis. 264; *State v. Bloom,* 17 Wis. 521; *Laver v. McGlachlin,* 28 Wis. 364; *Commonwealth v. Fowler,* 10 Mass. 290; *Fowler v. Beebe,* 9 Mass. 231, 6 Am. Dec. 62.

The jurisdiction of the court may always be inquired into on habeas corpus, but not the right of the judge to hold his office, which is a question wholly distinct from that

of the jurisdiction of the court over the offense or the party defendant. *In re Boyle, supra.*

To permit one convicted of an offense to question on habeas corpus the right of the judge, before whom he was tried, to hold his office, would result in intolerable confusion, and in some instances, no doubt, in the defeat of justice. And this the policy of the law forbids. It appears clear to our minds that John F. Miller, while he was acting as police judge under the mayor's appointment, was a *de facto,* if not a *de jure,* judge. And if he was but a *de facto* officer, his acts as such officer were valid and binding as to the public, or any individual, other than the officer himself. Thorpe, Public Officers, §§ 622, 649; Mechem, Public Officers, § 328; *State v. Fountain,* 14 Wash. 236, 44 Pac. 270; *State v. Carrall,* 38 Conn. 449, 9 Am. Rep. 409; *Ex parte Strong,* 21 Ohio St. 610; *In re Boyle, supra; State v. Bloom, supra.*

What we have already said renders it unnecessary to discuss the errors assigned on the action of the court in the admission of testimony and in overruling the demurrer to the petition.

The order discharging the respondent, Smith, is reversed.

Fullerton, C. J., and Hadley, Dunbar, and Mount, JJ., concur.